PRESENT:  Kinser, C.J., Lemons, Goodwyn, Millette, Mims and
Powell, JJ., and Russell, S.J.

JERRY LEE ANDERSON

                                      OPINION BY
v.  Record No. 110069      SENIOR JUSTICE CHARLES S. RUSSELL
                                  November 4, 2011
COMMONWEALTH OF VIRGINIA

             FROM THE COURT OF APPEALS OF VIRGINIA

     This appeal presents the question whether a prior

consistent statement made by the complaining witness in a

criminal case was properly admitted in evidence to rehabilitate

the witness after her impeachment by a prior inconsistent

statement.

                      Facts and Proceedings

     In accordance with familiar principles of appellate review,

the facts will be stated in the light most favorable to the

Commonwealth, the prevailing party at trial.  The complaining

witness (the victim) was a 41-year-old woman who lived with her

husband and two daughters, ages 12 and 17.  The victim had

completed only the seventh grade in school and had difficulty in

reading, writing and comprehending directions.  She had known

Jerry Lee Anderson (the defendant) for several years because he

had worked on her family's vehicles.

     On May 1, 2009, the victim encountered the defendant at a

food market.  He told her that her husband had asked him to

check the brakes on her van, that he would be at home "in a

little bit" and that she could bring the van over when she was ready.  The victim, who had her daughters with her, drove the van to the defendant's home in Pittsylvania County after leaving the store.  The defendant looked under the van's hood and told her that she would need to take the van somewhere to be put on a lift.  He invited her to come into the house and said he would give her the phone number of a place that had a lift.

Leaving her daughters to wait in the van, the victim followed the defendant into the house.  As she entered the door, the defendant closed it behind her and started "kissing on [her] [and] rubbing on [her]."  She told him to stop and struggled with him and he said, "I got you where I want you."  As the struggle continued, the defendant seized her arms with sufficient force to leave visible bruises.  The defendant forced her down onto a couch.  She felt a cold, hard object touch the left side of her head.  She testified that she did not see the object but heard a "click" that sounded like the cocking of a gun.  Assuming that a gun was being held to her head, she "froze."  While she felt the cold object still against her head, she submitted to an act of oral sodomy while the defendant sat astride her chest.

The defendant then put the object she felt against her head, but never saw, into his pocket and told her that she could leave.  He told her that he would kill her and her family if she

2

told anyone what had happened and reminded her that he knew where she worked and where she lived.

The victim had been in the defendant's house about 15 minutes, according to her younger daughter who had waited in the van. The daughter testified that her mother was red-faced and crying when she came out of the house but did not say why. When they returned home, the victim's husband was away at work. The victim told her daughters to watch television while she went into her own room where she could be heard crying.

The victim said nothing about the incident to her husband or daughters but on the following day she called Dr. Regina Curtis, a licensed clinical professional pastoral counselor at the Cross Roads Christian Counseling Center. The victim had been Dr. Curtis' client since 2004. The victim was "very upset and emotional." She named the defendant and said that he had "done bad things to her." Asked to specify the act that the victim described, Dr. Curtis said "oral sex." Dr. Curtis advised her to discuss the matter privately with her husband but nobody else until they received legal advice.

The victim worked as a volunteer at the Cross Roads Christian Counseling Center and knew Danville Police Officer Michael Klauss, who served on the center's board. After discussing the matter with her husband, she called Officer Klauss "around the beginning of May" and left a message asking

3

him to return her call.  He called her back and she asked if he could meet with her personally.  Officer Klauss met with her on or about May 7 and she gave him a full account of the incident.  After speaking with Officer Klauss,  she reported the matter to the Pittsylvania County Sheriff's Department, although she had been afraid to do so previously.  This resulted in an interview by Deputy Sheriff C. L. Eikost at her home, in the presence of her husband and Officer Klauss.  She described the incident to the deputy, who noted that she still had visible bruises on her arms.

J. Todd Barrett, an investigator with the sheriff's department, had the victim make two recorded telephone calls to the defendant, which Barrett audited.  During these calls, the defendant did not deny the victim's statements concerning the incident.  Investigator Barrett then went to the defendant's home and interviewed him.  At first, the defendant denied that anything had happened between him and the victim on May 1.  Later, when confronted with the content of the two telephone calls from the victim, the defendant changed his account and admitted that he had oral sex with the victim on May 1 but asserted that "it was her idea."

Indicted for fellatio by force in violation of Code § 18.2-67.1, the defendant waived trial by jury and the case came to a bench trial in the Circuit Court of Pittsylvania County.  The

Commonwealth presented the testimony of the victim, her younger daughter, Dr. Curtis, Officer Klauss, Deputy Eikost and Investigator Barrett. The defendant took the stand in his own defense and presented three witnesses to his good reputation for truth and veracity. When asked on cross-examination whether he contended that the encounter with the victim was "completely consensual," the defendant answered, "Yes, Ma'am."

In his opening statement, defense counsel stated that the evidence would show that the victim had made prior statements inconsistent with her testimony at trial,[1] particularly "regarding the firearm."

In his cross-examination of the victim, defense counsel asked her whether she had told Deputy Eikost that she "saw a gun." She denied having made that statement and said that she had tried to explain that she felt what she thought was a gun and heard its "click" but had not seen it.

Defense counsel objected to the testimony of Dr. Curtis and Officer Klauss when they were asked to recount what the victim

---

[1] The defense relied on several alleged inconsistencies in the victim's account of the events that followed the sexual assault. Because the defendant admitted the act of oral sex, however, contending only that it was consensual, none of these are material to the single issue in dispute at trial: whether the act was accomplished by force. Accordingly, we confine our consideration to statements concerning whether the victim saw a weapon.

had told them about the assault, on the ground that it was inadmissible hearsay. The Commonwealth responded that these accounts were offered as prior consistent statements to refute the defense's effort to impeach the witness by a prior inconsistent statement and that they were not offered as "substantive" evidence. The court overruled the objections. Dr. Curtis testified that the victim did not tell her that she saw a gun but that she "just felt it."

Officer Klauss testified that the victim told him that she couldn't describe the gun and all she could tell him was that "she heard him cock the gun." Officer Klauss gave a detailed account of the victim's statement to him, which corresponded closely with her trial testimony. Officer Klauss, who had been present at the victim's interview with Deputy Eikost, also testified, over a similar hearsay objection, that he recalled that she had told Eikost a similar version, that she had not actually seen the gun. Deputy Eikost testified that he had noted in his report that the victim said that she "saw the firearm." That is the inconsistency upon which the defense relied to impeach the testimony of the victim and upon which the court relied to justify the admission of the prior consistent statements made to Dr. Curtis and Officer Klauss.

The court found the defendant guilty and sentenced him to 15 years imprisonment with six years and six months suspended.

6

The Court of Appeals denied his appeal by a per curiam order and again on review by a three-judge panel. We awarded the defendant an appeal.

### Analysis

In Scott v. Moon, 143 Va. 425, 434, 130 S.E. 241, 243, (1925), we observed, "the repetition of a story does not render it any more trustworthy." For that reason, there is a general rule excluding the prior consistent statements of a witness that are offered for the purpose of buttressing his testimony at trial. Faison v. Hudson, 243 Va. 397, 404, 417 S.E.2d 305, 309 (1992) (citing cases). Nevertheless, in Virginia, there are two well-recognized exceptions to this general rule of exclusion. Prior out-of-court statements made by a witness, consistent with his testimony at trial, may, in those circumstances, be admitted for the purpose of rehabilitating the witness after his credibility has been challenged.

Circumstances triggering the first exception are attacks on the credibility of the witness suggesting that he has a motive to falsify his testimony, such as bias, interest, corruption or relationship to a party or a cause, or that his testimony at trial is a "recent fabrication" designed to serve such a motive. Our decisions in Faison and in Ruhlin v. Samaan, 282 Va. ___, ___ S.E.2d ___ (this day decided), discuss this exception to the general rule of exclusion. As we explained in Ruhlin, it is

7

subject to an important condition. The prior consistent statement, to be admissible, <u>must have been made before the motive to falsify existed</u>. <u>Id.</u> at \_\_\_, \_\_\_ S.E.2d at \_\_\_; <u>see also</u> Charles E. Friend, The Law of Evidence in Virginia, 182 (6th ed. 2003).

In Virginia, there is a second exception to the general rule of exclusion: Where the opposing party has attempted to impeach the witness by offering a prior inconsistent statement made by the witness, prior consistent statements made by the witness are admissible to support the witness. <u>Id.</u>

> It is appropriate to admit a prior consistent statement under these circumstances. The fact that a witness made a prior consistent statement, as well as an inconsistent statement, is relevant in considering the impeaching effect of the inconsistent statement on the witness's testimony.

<u>Clere v. Commonwealth</u>, 212 Va. 472, 473, 184 S.E.2d 820, 821 (1971). Although we recognized, in <u>Clere</u>, that other jurisdictions followed different rules, some excluding prior consistent statements altogether in these circumstances, we adhere to the principle that the fact-finder, having the responsibility of weighing the credibility of the witness, is entitled to consider both the fact that he uttered consistent statements, along with inconsistent statements, and the circumstances in which each was made, in determining the weight to be given to his testimony.

The present case, like <u>Clere</u>, involves the second exception. In contrast to the first, the second exception has never been subject to the requirement that the prior consistent statement, to be admissible, must have been made at a time when no motive to falsify existed.[2] The reason for the distinction is that the first exception applies only where the opposing party has made an attack on the credibility of the witness by attempting to show that he has a motive to falsify his testimony. In the case of a party litigant in a civil case or the defendant in a criminal case testifying in his own behalf, such a motive is ordinarily self-evident. In the case of an apparently neutral and independent witness, however, the opposing party must have attacked the credibility of the witness by suggesting that such a motive exists. The second exception, however, is triggered by the introduction of a prior inconsistent statement, without more. It is not dependent upon

---

[2] In <u>Clere</u> the witness testified at trial that the defendant murdered the victim. Shortly after the crime, the witness herself had initially confessed to police that she committed the killing, but then offered a second statement to police during their investigation, naming defendant as the killer. This second statement was made after the statement naming herself as the killer, and thus it was made after the witness arguably had a litigation motive to shift blame from herself to another person. This later statement was held properly admitted once the first statement admitting her own guilt was used as a prior inconsistent statement to impeach her trial testimony. 212 Va. at 473, 184 S.E.2d at 821.

9

a contention, by the opposing party, that the witness has a motive to falsify.  The prior inconsistent statement, by itself, calls the trustworthiness of the testimony of the witness into question.  It is then appropriate, as we said in <u>Clere</u>, to admit a prior consistent statement made by the witness as it may affect his credibility.

Both exceptions to the general rule excluding prior consistent statements are subject to the limitation that the prior consistent statement may be considered by the fact-finder only for the fact of its utterance, not for the truth of its content.[3]  Because it is not offered for its truth, it is "non-hearsay" and not subject to the hearsay rule.[4]  The fact-finder may consider the fact of its utterance along with all other evidence bearing on the credibility of the witness.

In the present case, the defendant established that there was an inconsistency between the victim's testimony that she had not seen a gun and Deputy Eikost's note in his report that she had told him otherwise.  Applying the principles stated above, we hold that this was sufficient to trigger the second exception to the rule excluding prior consistent statements.  The fact

---

[3] In a jury trial, the jury must be so instructed.

[4] Properly speaking, such evidence does not come within an "exception to the hearsay rule" because it is not hearsay at all.  <u>Andrews v. Commonwealth</u>, 280 Va. 231, 296, 699 S.E.2d 237, 274 (2010).

that both the consistent and the inconsistent statements were elicited from witnesses called by the same party is immaterial. Creasy v. Commonwealth, 9 Va. App. 470, 474, 389 S.E.2d 316, 318 (1990). We therefore hold that the circuit court did not err in admitting the victim's prior consistent statements to Dr. Curtis and Officer Klauss.

The defendant argues on appeal that the prior consistent statements that the circuit court admitted in evidence over his objection went far beyond proof of the mere fact of their utterance, as would have been admissible under the second exception discussed above or under Code § 19.2-268.2. Indeed, Officer Klauss testified to all the details related to him by the victim, which nearly amounted to a repetition of her trial testimony.

Even in a case tried without a jury,[5] the amount of detail contained in a prior consistent statement that may properly be admitted into evidence is limited. At some point, restatement of the impeached witness' account crosses the line separating rehabilitation from mere repetition, recalling our admonition in

---

[5] A judge hearing a case without a jury is vested with wider discretion in the admission of evidence, because of training and experience, than he or she would be when presiding at a jury trial. See e.g., Adams v. Adams, 233 Va. 422, 429, 357 S.E.2d 491, 495 (1987); Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981).

Scott v. Moon, quoted above.  In the present case, however, it is unnecessary to define the outer limits of the permissible detail that may be admitted when a prior consistent statement is offered to rehabilitate a witness impeached by a prior inconsistent statement.  Assuming, without deciding, that parts of the prior consistent statements presented by the Commonwealth in this case were overly repetitious of the victim's trial testimony, and that the circuit court erred in admitting them, that error was harmless in the circumstances.

A non-constitutional error is harmless when it "'plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.' "  Rose v. Commonwealth, 270 Va. 3, 11-12, 613 S.E.2d 454, 458 (2005) (quoting Code § 8.01-678).  In a criminal case, if "the alleged error substantially influenced" the finder-of-fact, the error is not harmless.  Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001).

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and judgment should stand . . . .  But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand.

12

*Rose*, 270 Va. at 12, 613 S.E.2d at 458-59.

Independent evidence bolstered the credibility of the victim in this case. Both Dr. Curtis and Officer Klauss testified that the victim reported the sexual assault soon after it happened, which testimony was admissible under Code § 19.2-268.2. The victim's daughter testified that her mother was crying when she came out of the defendant's house and when they returned to their home; and Deputy Eikost testified to seeing bruises on the victim's arms still visible days after the event. The court also heard the testimony of Investigator Barrett, stated above, concerning the defendant's reaction to the recorded telephone calls and his denials, followed by his admission that he had indeed engaged in oral sex with the victim.

Considering this testimony and the trial court's ability to directly see and hear the witnesses as they testified, we can say "with fair assurance" that any error "had but slight effect" on the trial court's credibility determinations. *Clay*, 262 Va. at 260, 546 S.E.2d at 731.

### Conclusion

Based on the record, we conclude that the defendant "had a fair trial on the merits and [that] substantial justice has been reached." *Rose*, 270 Va. at 12, 613 S.E.2d at 458. For the

13

reasons stated, we will affirm the judgment of the Court of Appeals.

Affirmed.