UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Fulton and White
Argued by videoconference


SAUL GARAY-AMAYA

v.     Record No. 0417-22-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
MARCH 28, 2023


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY[1]
Stephen C. Shannon, Judge

Michael C. Cash, Assistant Public Defender, for appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Saul Garay-Amaya ("appellant") of one count each of abduction, in

violation of Code § 18.2-47, strangulation, in violation of Code § 18.2-51.6, and object sexual

penetration, in violation of Code § 18.2-67.2.[2]  On appeal, appellant contends that the trial court

erred in refusing to dismiss the abduction charge because any detention was incidental to the

strangulation and object sexual penetration charges.  He also argues that the evidence was

insufficient to prove the requisite penetration for a conviction for object sexual penetration.  For the

following reasons, we affirm the trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413.

[1] Judge Daniel E. Ortiz briefly participated in this case in the circuit court.  Subsequently
elected to this Court, he did not participate in the consideration or resolution of this appeal.

[2] The jury acquitted appellant of a charge of object sexual penetration of the victim's
anus, in violation of Code § 18.2-67.2.

## I. BACKGROUND

On the night of September 11, 2020, seventeen-year-old T.M.R.[3] attended a house party in Maryland. At 2:00 a.m. the following morning, she posted a message on her Snapchat social media account requesting a ride home. At 4:30 a.m., T.M.R.'s Snapchat "friend," appellant, picked her up in a van in response to her request. T.M.R. gave appellant her Virginia address, and the address was entered into the GPS function on appellant's cell phone. As appellant drove, T.M.R. noticed him giving her "looks" and she became "uncomfortable" and "afraid."

Despite having T.M.R.'s address in his cell phone, appellant eventually "went down another route" before stating that he was lost. Appellant stopped the van in a neighborhood T.M.R. did not recognize. When T.M.R. told him that she "wanted to go," appellant asked her to kiss him. T.M.R. stated that she "didn't want to," and appellant went "crazy" and accused her of "want[ing] to escape." T.M.R. tried to open her door, but appellant "grabbed [her]" hand, "pulled it," and locked the door shut. He prevented T.M.R. from trying to open the door again. Appellant then kissed T.M.R., reached under her shirt, and touched and licked her breasts. He also grabbed T.M.R.'s neck and throat and choked her. Despite T.M.R.'s resistance and pleas for appellant to stop, he shoved his hands into the rear of her pants and underwear and touched her anus and put "his fingers inside [her] vagina." T.M.R. also characterized this contact as appellant "putting his fingers in a little bit," and she denied having any doubt that appellant was inside her vagina "because [she] felt his hand." T.M.R. eventually managed to unfasten her seat belt, opened her door, and ran home to contact the police.

T.M.R. later went to the hospital, where forensic nurse Ashleigh Daniel conducted a sexual assault examination. T.M.R. told Daniel that appellant touched her breasts, "put his fingers in her intimate parts," and tried to suffocate her. She also reported that she was sexually

---

[3] To protect the victim's privacy, we use her initials rather than her name.

active and had had sex five days earlier, during which her partner had penetrated her vagina. Daniel noted bruises to T.M.R.'s neck and two abrasions on her back, but T.M.R.'s genitals and anus were uninjured.

Police arrested appellant, and a grand jury indicted him for abduction, strangulation, and two counts of object sexual penetration. One of the indictments for object sexual penetration specifically alleged that appellant "did feloniously penetrate the labia majora of T.M.R."

At trial, Daniel testified as an expert in sexual assault examinations and forensic nursing. She opined that T.M.R.'s bruised neck was "consistent with the report of strangulation" and stated that she had "confirmed" T.M.R.'s report of "fingers in the vagina contact" during her examination. Although Daniel had not detected any injuries to T.M.R.'s vaginal area and T.M.R.'s results had been those of a "normal genital exam," Daniel explained that she was unsurprised by this because "[y]ou don't always see injury with the report of sexual assault." She also testified that she would not necessarily expect to see substantial injury from fingers being inserted into a vagina.

After the Commonwealth's evidence, appellant moved to strike the object sexual penetration charges. He argued that T.M.R.'s testimony describing the assault was "just inherently incredible." He also moved to strike the abduction charge, asserting that T.M.R.'s detention was incidental to the charges of object sexual penetration and strangulation. The trial court denied the motion to strike the abduction charge. It granted in part and denied in part the motion to strike the object sexual penetration charges, granting only appellant's request that language referencing the mental incapacity or physical helplessness of the victim be struck from the indictments.

Appellant testified that he and T.M.R. became "friends" on Snapchat in 2019 or 2020. He admitted that he had flirted with T.M.R. while driving her home and asked if she had a

boyfriend. Appellant maintained that he drove directly to T.M.R.'s residence without stopping. He claimed that he showed T.M.R. his cell phone's GPS navigation application to prove that he had arrived at "the exact address" she provided. Appellant denied that he tried to kiss T.M.R., locked his van door when she tried to get out, placed his hand on her neck, or put a finger inside her vagina. Rather, he maintained that after arriving at her residence, they "said goodbye and she got out of the car."

Renewing his motion to strike on the same grounds, appellant added that the evidence failed to prove that he had penetrated "the outer lips of the female sexual organ or the labia majora." The trial court denied the motion. The jury convicted appellant of abduction, strangulation, and object sexual penetration of T.M.R.'s vagina.

Appellant moved to set aside the verdict, arguing that the Commonwealth had failed to show that any detention of T.M.R. was separate and apart from the restraint employed in the commission of the other offenses. He also contended that the indictment for the vaginal object sexual penetration charge required the Commonwealth to prove specifically that he had penetrated T.M.R.'s labia majora, but that "[t]here was no specific testimony by [T.M.R.] of what exact part of her body she was referring to when she referenced her vagina . . . or what part of her vagina [appellant's] finger went inside." The trial court denied the motion.

This appeal followed.

## II. ANALYSIS

Appellant argues that the trial court erred by denying his motion to strike and his motion to set aside the verdict on the abduction and object sexual penetration charges.

"In challenging the trial court's denial of his motion to strike, [appellant] necessarily asserts that the jury should not have been allowed to even consider the charges because '[a] motion to strike challenges whether the evidence is sufficient to submit the case to the jury.'"

- 4 -

*Massie v. Commonwealth*, 74 Va. App. 309, 319 (2022) (last alteration in original) (quoting *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014)). "As a result, [appellant's] challenge raises the question of whether the evidence adduced sufficiently presented 'a *prima facie* case [of the charged offenses] for consideration by the' jury." *Walker v. Commonwealth*, 74 Va. App. 475, 489 (2022) (quoting *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017)). "Whether the evidence adduced is sufficient to prove each of th[]e elements [of the offenses] is a factual finding, which will not be set aside on appeal unless it is plainly wrong." *Vay*, 67 Va. App. at 249 (quoting *Linnon*, 287 Va. at 98). Similarly, "[w]hen a trial court decides a motion to set aside the verdict, the [reviewing] court only looks to whether the jury's verdict is 'plainly wrong or without evidence to support it.'" *Spell v. Commonwealth*, 72 Va. App. 629, 634 (2020) (quoting *Wagoner v. Commonwealth*, 289 Va. 476, 484 (2015)).

In conducting our review, "this Court is required to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn' from the evidence." *Goodwin v. Commonwealth*, 71 Va. App. 125, 146-47 (2019) (quoting *Seaton v. Commonwealth*, 42 Va. App. 739, 743 (2004)). "[T]his Court likewise gives deference to the fact finder's assessment of witness credibility. Determining 'the "credibility of the witnesses and the weight of the evidence" are tasks left "solely [to] the trier of fact" unless those determinations are "plainly wrong or without evidence to support [them]."'" *Washington v. Commonwealth*, 75 Va. App. 606, 615-16 (2022) (alterations in original) (quoting *Nelson v. Commonwealth*, 73 Va. App. 617, 622 (2021)). "Similarly, '[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt.'" *Id.* at 616 (alteration in original) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)). "After so viewing the evidence, the question is

whether any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." *Lawlor v. Commonwealth*, 285 Va. 187, 224 (2013) (quoting *Commonwealth v. McNeal*, 282 Va. 16, 20 (2011)). "In sum, if there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial." *Linnon*, 287 Va. at 98 (quoting *Lawlor*, 285 Va. at 224).

### A. Abduction

Appellant contends that the trial court erred in refusing to dismiss the abduction charge because any detention involved was incidental to the strangulation and sexual assault offenses. Relying on the incidental detention factors articulated in *Hoyt v. Commonwealth*, 44 Va. App. 489, 494 (2004), he argues that the detention of T.M.R. was "slight" in duration, "occurred during the commission of the strangulation and sexual assault," was "intrinsic" to those offenses because the victim must "be held still for those actions to occur," and did not create "a significant danger [to T.M.R.] independent of that posed" by the other offenses. We disagree.

A person is guilty of abduction if, "by force, intimidation or deception, and without legal justification or excuse, [he or she] seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty." Code § 18.2-47(A). The Virginia Supreme Court has held that one may detain a victim by requiring her to "remain in a certain location, or even in a certain position," through use of force, intimidation, or deception. *Burton v. Commonwealth*, 281 Va. 622, 628 (2011).

The Court has also held that a person accused of abduction by detention and another crime involving the restraint of a victim, both offenses arising out of a "continuing course of conduct," may be subjected "to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the

restraint employed in the commission of the other crime." *Brown v. Commonwealth*, 230 Va. 310, 314 (1985). Stated simply, if abduction is "intrinsic" to the defendant's commission of another crime of restraint, the defendant cannot be convicted of both crimes. *See Scott v. Commonwealth*, 228 Va. 519, 526 (1984) (recognizing that "in rape, robbery, and assault cases there is usually some [intrinsic] detention . . . of the victim"). "[W]hether an abduction is merely incidental to another crime is a question of law," which we review *de novo*. *Epps v. Commonwealth*, 66 Va. App. 393, 402 (2016) (quoting *Hoyt*, 44 Va. App. at 496 n.4), *aff'd on other grounds*, 293 Va. 403 (2017). However, "because no two crimes are exactly alike, determining whether an abduction is incidental necessarily requires consideration of the historical facts of each case." *Id.* (quoting *Hoyt*, 44 Va. App. at 496 n.4).

To determine whether an abduction is "intrinsic" to a defendant's commission of another crime of restraint, the test is "whether any detention exceeded the minimum necessary to complete the required elements of the other offense." *Lawlor*, 285 Va. at 225. In making this determination, four factors are relevant:

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

*Smith v. Commonwealth*, 56 Va. App. 711, 721 (2010) (quoting *Hoyt*, 44 Va. App. at 494). Applying these principles, this Court has held that asportation to decrease the possibility of detection amplifies the risk of harm to the victim and is therefore not intrinsic to other crimes of restraint. *See, e.g.*, *Coram v. Commonwealth*, 3 Va. App. 623, 626 (1987) (dragging victim to conceal her from view was not intrinsic to defendant's commission of rape). Similarly, an abduction completed before other crimes of restraint is not incidental to their commission. *See, e.g.*, *Smith*, 56 Va. App. at 723 (luring victim into bedroom under "false impression" that her

- 7 -

friend would meet her and locking the door was not intrinsic to defendant's subsequent commission of attempted rape).

Here, the record supports the conclusion that appellant lured T.M.R. into his van to detain her before strangling and sexually assaulting her. The evidence established that although T.M.R. willingly accepted appellant's ride, she became uncomfortable and afraid when appellant gave her certain "looks" and flirted with her as he drove. Despite using T.M.R.'s "exact address" to navigate via his cell phone's GPS system, appellant "went down another route," stopped the van, and claimed to be lost. When T.M.R. said that she wanted to leave and refused to kiss appellant, he became "crazy" and accused her of "want[ing] to escape." From this evidence, a reasonable finder of fact could have concluded that appellant deceived T.M.R. to induce her to "remain" in his van so he could assault her. *Burton*, 281 Va. at 628. That appellant then grabbed T.M.R. and locked the van door when she attempted to leave reinforces this conclusion.

In addition, the evidence established that T.M.R.'s abduction occurred before appellant strangled or sexually assaulted her. At trial, T.M.R. testified that appellant assaulted and strangled her after he "grabbed [her]" hand, "pulled it," and locked the van door. Indeed, the jury could reasonably have inferred that appellant locked the door specifically to avoid T.M.R.'s escape, and the possible detection of his offense, as he attacked her. *Cf. Smith*, 56 Va. App. at 723 (luring victim into bedroom under false pretenses and locking the door was not intrinsic to the ensuing attempted rape). Additionally, the jury was entitled to disregard appellant's testimony that he drove directly to T.M.R.'s "exact address" and that T.M.R. then said goodbye and left the van without incident as self-serving testimony intended to conceal his guilt. *See Washington*, 75 Va. App. at 616.

In sum, the record supports that appellant abducted T.M.R. before strangling and sexually assaulting her and that his detention of T.M.R. was not intrinsic to the strangulation and sexual

assault. Accordingly, the trial court was not plainly wrong or without supporting evidence when it denied appellant's motion to strike and refused to set aside the verdict for the abduction charge.

### B. Object Sexual Penetration

Appellant contends that the Commonwealth failed to prove that he penetrated T.M.R.'s labia majora as alleged in the indictment for object sexual penetration. He asserts that T.M.R.'s "reference to her vagina, without more," was insufficient to establish the element of penetration under the indictment's additional, more specific "labia majora language." Relying on the Supreme Court's decision in *Moore v. Commonwealth*, 254 Va. 184 (1997), appellant argues that "the law demands more specificity on the area that was touched and the complainant's familiarity with her anatomy." Finally, he asserts that the evidence failed to prove penetration because "there was no other testimony to corroborate" it. We disagree.

Regardless of an indictment's language, Code § 18.2-67.2(A)[4] "requires penetration of the victim's labia majora, which is the outermost part of the female genitalia." *Davis v. Commonwealth*, 272 Va. 476, 478 (2006).[5] Penetration, however, "need be only slight." *Jett v. Commonwealth*, 29 Va. App. 190, 194 (1999) (*en banc*) (quoting *Horton v. Commonwealth*, 255 Va. 606, 612 (1998)); *see also Love v. Commonwealth*, 18 Va. App. 84, 89 (1994) (holding that the "same degree of penetration" is required for object sexual penetration, rape, and sodomy). Moreover, it is well-established that a victim's uncorroborated testimony alone may be sufficient

---

[4] "An accused shall be guilty of inanimate or animate object sexual penetration if he or she penetrates the *labia majora* or anus of a complaining witness." Code § 18.2-67.2(A) (emphasis added).

[5] The Virginia Supreme Court has recognized that the "vulva . . . encompasses the 'external parts of the female sex organs considered as a whole' and *includes, beginning with the outermost parts, the labia majora*, labia minora, hymen, [and] vaginal opening." *Moore*, 254 Va. at 190 (emphasis added) (quoting *Love v. Commonwealth*, 18 Va. App. 84, 88 (1994)).

to convict a defendant of object sexual penetration. *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984).

Applying those principles, this Court has held that although a ten-year-old victim "did not know the meaning of the terms 'labia majora' or 'vulva,'" her testimony that the defendant "touched her vagina with his tongue" established that he "penetrated not only [her] vulva, but also specifically her vagina." *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 48-49 (2019). This was so because the object used to penetrate the victim first passed through the labia majora to reach the vagina. *See id.* Thus, the evidence of penetration also was sufficient where an adult victim was "aware of the intricate structure of her genitalia" and she "testified explicitly that the defendant put his finger 'inside' the front area of the lips of her vagina." *Davis*, 272 Va. at 479; *see also Lawson v. Commonwealth*, 13 Va. App. 109, 113-14 (1991) (finding insufficient evidence of penetration where victim testified that the defendant performed "oral sex," but she did not specify that he put his tongue "inside [her] vagina").

Here the record supports the jury's finding that appellant penetrated T.M.R.'s labia majora. T.M.R. testified that appellant touched her with "his fingers inside [her] vagina." She further characterized this contact as appellant "putting his fingers in a little bit," and she denied having any doubt that appellant was in her vagina "because [she] felt his hand." This testimony alone was sufficient to prove penetration. *See Alvarez Saucedo*, 71 Va. App. at 48-49. Consistent with her testimony, T.M.R. also told the forensic nurse that appellant "put his fingers in her intimate parts." *See Anderson v. Commonwealth*, 282 Va. 457, 464 (2011) (holding that a fact finder may consider a witness's prior consistent statements in assessing credibility). In addition, the jury was entitled to discount appellant's denial that he put a finger inside T.M.R.'s vagina as mere self-serving testimony intended to conceal his guilt. *See Washington*, 75 Va. App. at 616.

Additionally, appellant's reliance on *Moore* is unpersuasive. In *Moore*, the Court held that a thirteen-year-old victim's conflicting testimony that the defendant placed his penis "'in' and 'on' the victim's vagina" was insufficient to prove penetration in a rape case. 254 Va. at 189. The Court noted that "there [was] no indication whatever in the record that the young victim . . . was aware of the intricate structure of her sexual organ." *Id.* at 190. By contrast, T.M.R. unequivocally testified that appellant put his finger in—and thus digitally penetrated— her vagina. Further, T.M.R. was seventeen years old and sexually active when the incident occurred. Indeed, she told the forensic nurse examiner that her sexual partner had penetrated her vagina only five days before the assault. From this evidence, the jury could reasonably have inferred that T.M.R. was familiar with the "intricate structure of her sexual organ." *Id.* at 190. Accordingly, *Moore* is factually distinguishable from the instant case.

T.M.R.'s testimony that appellant digitally penetrated her vagina was competent, not inherently incredible, and sufficient to prove the element of penetration. Accordingly, a reasonable trier of fact could have concluded beyond a reasonable doubt that appellant penetrated T.M.R.'s labia majora with his finger and that he was thus guilty of object sexual penetration. The trial court's decision to deny appellant's motion to strike and to set aside the verdict of object sexual penetration was thus neither plainly wrong nor without supporting evidence, and we will not disturb it.

### III. CONCLUSION

For the above reasons, the trial court did not err in denying appellant's motions to strike and to set aside the verdict. Accordingly, we affirm appellant's convictions for abduction and object sexual penetration.

*Affirmed*.

- 11 -