COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Huff and Callins
Argued at Richmond, Virginia


MATTHEW WILLIAM NEWBERGER

MEMORANDUM OPINION* BY
v.        Record No. 0677-22-2           JUDGE DOMINIQUE A. CALLINS
JUNE 27, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ORANGE COUNTY
David B. Franzén, Judge

Bryan Jones (Bryan J. Jones, LLC, on brief), for appellant.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Matthew Newberger of several felonies

involving his sexual conduct with a minor child. In the same trial, Newberger was also acquitted of

several offenses. On appeal, Newberger argues that the trial court erred in allowing the

Commonwealth's expert witness to testify because the Commonwealth did not comply with the

pretrial discovery order. He also contends that the trial court erred by admitting into evidence prior

consistent statements of the victim, text messages that Newberger sent to the victim's aunt, and the

curriculum vitae ("CV") of the Commonwealth's expert witness. In addition, Newberger

challenges the sufficiency of the evidence to sustain the convictions for five counts of indecent

liberties with a child, one count of aggravated sexual battery, and one count of object sexual

penetration. Finding no reversible trial court error, we affirm the judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1 413.

## BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, we discard any of Newberger's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

In September 2018, C.L.'s mother, Keri Newberger ("Keri"), agreed with C.L.'s grandfather, Jeffrey Newberger ("Jeffrey"), that C.L. would live at his home during the school week to accommodate Keri's work schedule. As a result, on the days that she attended kindergarten, C.L. lived with Jeffrey and his adult disabled son. Toward the end of 2018, Newberger, C.L.'s great-uncle, also began living at the residence. Newberger and C.L. slept in the same bedroom in the home.

In March 2020, an Orange County grand jury indicted Newberger for rape and several other charges committed against C.L. On December 8, 2020, the trial court issued a pretrial discovery order that required the Commonwealth, within twenty-eight days of the order, to "notify [Newberger] in writing of the Commonwealth's intent to introduce expert opinion testimony at trial," as well as any existing "written report of the expert witness setting forth the witness's opinions and the bases and reasons for those opinions." At the time of the discovery order, the matter was scheduled for a bench trial on March 2, 2021. Following several continuances, the case was set for a jury trial to begin on June 21, 2021.

At a pretrial hearing on May 10, 2021, the Commonwealth moved *in limine* to permit C.L. to testify by closed-circuit television pursuant to Code § 18.2-67.9. C.L. was six years old at the time of the alleged offenses and eight years old at the time of trial. At the pretrial hearing,

the Commonwealth presented evidence from Chantal Racheau-Bryant, a licensed professional counselor who specialized in childhood trauma. She testified that she had been treating C.L. for almost two years following the 2019 incidents that led to these charges. When Racheau-Bryant and C.L. began therapy, C.L. was emotional, having flashbacks, and frequently acting out with violent behavior. Through therapy, C.L. used drawings to describe the sexual abuse. Racheau-Bryant testified that C.L. described multiple separate incidents of sexual abuse, including Newberger's penis touching her and "multiple incidents in the bed where he would lay next to her" and "fondle" her. C.L. also told Racheau-Bryant that Newberger had hit C.L. and threatened to harm her or her family. Racheau-Bryant found that C.L. initially could not verbalize her emotions, but through therapy had achieved clarity about the trauma.

As an expert in trauma therapy for children, Racheau-Bryant stated that for C.L. to be in Newberger's presence would create a collision of C.L.'s conflicting emotions toward him, which included fear, love, and anger about what he had done to her. Thus, C.L. could sustain a "re-traumatization experience" if required to testify in court just a few feet away from Newberger. Racheau-Bryant recommended that C.L. not be required to testify in Newberger's presence because C.L. could "shut down, have a meltdown, or lie[] because she would be so afraid of speaking the truth." The trial court granted the Commonwealth's motion to permit C.L. to testify through closed-circuit television.

When he learned on the morning of trial that the Commonwealth planned to have Racheau-Bryant testify at trial, Newberger filed a motion *in limine* to exclude any expert testimony because the Commonwealth failed to make the required disclosures regarding expert evidence. The trial court found that the Commonwealth had not complied with the disclosure requirements of the discovery order, but ruled that Racheau-Bryant could testify because her existence and the content of her opinions were known to the defense from the May 2021 hearing.

However, the trial court also ruled that Racheau-Bryant would not be permitted to opine on C.L.'s credibility or the source of her trauma.

At trial, C.L.'s mother, Keri, testified that she noticed changes in C.L.'s behavior after Newberger joined the residence. C.L. initiated open-mouthed kissing and romantic caressing that made Keri uncomfortable. Keri also observed C.L. masturbating over her clothes. C.L. showed anger by yelling and throwing things, where previously she had been a carefree and adventurous child. Jeffrey also testified that he noticed changes in C.L.'s behavior during that time, as she was moody and would "act up a lot."

Brittany Newberger ("Brittany") was Keri's sister-in-law and Jeffrey's son's weekday caregiver; she was in the home daily. Brittany testified that from 2018 into 2019, C.L. became increasingly controlling, aggressive, and angry. Brittany saw that C.L. often sat on Newberger's lap when they watched television together and when they ate meals at the family dining table. At some point, Newberger told Brittany that he was helping C.L. with her showers to make sure she was cleaning herself properly. Brittany once saw C.L. on top of Newberger on the floor of a bedroom in the house during afternoon naptime. Upon noticing Brittany, C.L. "jumped off" Newberger and laid down beside him.

By closed-circuit television, C.L. testified that after Newberger came to live at the house, he touched her in her "private area" and it "felt really weird" in a bad way. Using an anatomical drawing of a female, C.L. identified the "private" as the front genital area. C.L. testified that Newberger touched her both in the daytime and nighttime, but more often in the morning. She said that the touching occurred while she and Newberger were in the bed, the shower, and the bathroom. Newberger kissed her on the "lip," cheek, and "private" and touched her with his mouth, penis, and hands. C.L. did not tell anyone about the touching because Newberger told

- 4 -

her not to, and he threatened to hurt her mother or grandfather if she did. C.L. also testified about drawings that C.L. made during art therapy, depicting herself and Newberger.

C.L. testified that Newberger touched her "four or five times" with his penis inside her private area "a little bit and sometimes a lot." With his hands, Newberger touched her on the "inside" of her private part for about two minutes. Newberger also touched C.L.'s "butt" with his hands and put his mouth on her "private part." C.L. said that Newberger put his fingers "up [in her] private." She also stated that she sometimes sat on Newberger's lap. Twice, Newberger threw toys at C.L., once hitting her in the head and causing her to cry.

C.L. also testified that she told Racheau-Bryant that Newberger had guns and knives, but she acknowledged that this was not true and that she had not actually seen him with a knife. C.L. testified that she "used to" lie, but "not anymore."

C.L. first reported Newberger's conduct before a trip to the beach with Brittany, after Brittany asked C.L. if Newberger ever touched her. Immediately after C.L. returned from the trip, Keri reported the matter to law enforcement and eventually took C.L. to therapy with Racheau-Bryant. Upon learning of the allegations, Jeffrey confronted Newberger. Newberger "threw up his hands" and swore that he had not touched C.L. Newberger left the house and did not return to live there permanently.

As Exhibit 6, the Commonwealth introduced a screenshot of text messages Newberger sent to Brittany on June 11 and 12, 2019.[1] In a message, Newberger wrote that he did not touch C.L. inappropriately while at a swimming pool the previous day, but that he only touched her "hands and her side when she swam to [him]." He denied touching "any private parts."

---

[1] The trial court overruled Newberger's best evidence rule objections to the text messages. However, the trial court sustained Newberger's hearsay objection to the messages and redacted Exhibit 6 to remove text messages sent by Brittany.

- 5 -

Newberger also wrote that C.L. gave him a "[p]urpose and meaning in life" and that "now [he] ha[s] nothing."

Last, the Commonwealth called Racheau-Bryant as an expert witness. Newberger objected to the Commonwealth's admission of Racheau-Bryant's CV into evidence on hearsay grounds. The trial court overruled the objection and admitted the CV. Racheau-Bryant testified that she is a licensed professional counselor who specializes in treating both child and adult trauma. The trial court recognized Racheau-Bryant as an expert in child sexual trauma.

Racheau-Bryant testified that, in her professional opinion, C.L. displayed symptoms of childhood trauma. She described typical symptoms of childhood trauma and the specific signs of sexual trauma that therapists look for in children. Racheau-Bryant also testified that it was not unusual for children to make inconsistent statements about traumatic events because of the way a child's brain works and processes trauma.

In his defense, Newberger called Detective Adrienne Powell as a witness to impeach C.L.'s credibility. Detective Powell had interviewed C.L. on April 8, 2020, and during the interview, C.L. told the detective that Newberger kept knives in his pockets and sometimes demonstrated their sharpness by cutting C.L.'s finger. C.L. also said that Newberger had pointed a knife at her body and that she once snatched the knife from Newberger so that she could finish her shower. C.L. said that she hid the knife in her closet, but he found it and subsequently used it against her.

During cross-examination of Detective Powell, the Commonwealth attempted to elicit prior consistent statements of C.L. to rehabilitate her credibility. Newberger objected to the Commonwealth's questions, arguing that the consistent statements "have to be related to the issues that [he] brought as far as the prior inconsistent" statements. The trial court overruled Newberger's objection. Detective Powell then testified to numerous statements that C.L. made

during the police interview. This included statements that Newberger helped her with baths and showers, touched her in "weird" places, put his finger in her private multiple times, kissed her private with his tongue and lips, and told her not to tell anyone about the touching.

Consistent with the jury's verdict, the trial court convicted Newberger for rape, two counts of object sexual penetration, and five counts each of aggravated sexual battery, indecent liberties with a child, and contributing to the delinquency of a child.[2] This appeal followed.

ANALYSIS

I.

Newberger argues that the trial court erred in allowing Racheau-Bryant to testify because the Commonwealth violated the expert witness notice provisions in the pretrial discovery order.

If a party fails to comply with a discovery order under Rule 3A:11, "the court must order such party to permit the discovery or inspection of materials not previously disclosed, and may grant such other relief authorized by Virginia law as it may in its discretion deem appropriate." Rule 3A:11(h). Under Code § 19.2-265.4(B), permissive sanctions for a discovery violation include that the trial court "may order the Commonwealth to permit the discovery or inspection, grant a continuance, or prohibit the Commonwealth from introducing evidence not disclosed, or the court may enter such other order as it deems just under the circumstances." Rule 3A:11 and Code § 19.2-265.4 authorize the trial court to tailor the remedy for a discovery order violation to meet both the nature and degree of prejudice incurred by a defendant and the flagrancy of the violation.

"When a discovery violation does not prejudice the substantial rights of a defendant, a trial court does not err in admitting undisclosed evidence." *Davis v. Commonwealth*, 230 Va.

---

[2] The jury acquitted Newberger of five counts of sodomy, three counts of object sexual penetration, and assault and battery.

201, 204 (1985); *Smoot v. Commonwealth*, 37 Va. App. 495, 502 (2002). "To show prejudice, the defendant must demonstrate how timely disclosure would have changed his trial strategy or affected the outcome of the trial." *Smoot*, 37 Va. App. at 502; *see also Davis*, 230 Va. at 204 (holding that to demonstrate prejudice from the nondisclosure of inculpatory evidence, defense counsel must "suggest to the trial court how their earlier disclosure would have benefited [defendant's] defense or altered the course of the trial"); *Knight v. Commonwealth*, 18 Va. App. 207, 215 (1994) (holding that to demonstrate prejudice from the late disclosure of inculpatory evidence, defendant must show "how his trial tactics might have been different if [the evidence] had been disclosed before trial").

After determining that the Commonwealth did not comply with the pretrial discovery order, the trial court ruled that Racheau-Bryant could testify about her expert opinion but could not opine on C.L.'s credibility or the source of C.L.'s trauma. Newberger claims that he was unfairly prejudiced by this ruling because he was denied the opportunity to examine the basis for Racheau-Bryant's testimony outside the presence of the jury. But he fails to articulate how timely disclosure would have changed his strategy or affected the outcome of the case. Moreover, the record reflects that it did not.

At the pretrial hearing, Newberger had ample opportunity to cross-examine Racheau-Bryant about her expert opinion and conclusions regarding C.L.'s trauma. Upon confirming that the Commonwealth intended to call Racheau-Bryant as an expert witness, Newberger did not request a continuance or an opportunity to question her outside the jury. Nor did he question Racheau-Bryant about the basis for her expert opinion during cross-examination. Considering these circumstances, Newberger failed to show prejudice from the late disclosure of Racheau-Bryant as an expert witness, and the trial court did not abuse its discretion in allowing

her limited testimony.  *See Davis*, 230 Va. at 204 (holding that admitting undisclosed evidence is not an error when the violation did not prejudice the defendant's substantial rights).

II.

Newberger contends that the trial court erred in permitting the Commonwealth to introduce "alleged prior consistent statements of C.L." through cross-examining Detective Powell.  He maintains that the trial court should have excluded any statements beyond the scope of the prior inconsistent statements he elicited to impeach C.L.'s credibility.  He argues that this allowed the Commonwealth to improperly bolster C.L.'s credibility and deprived him of the opportunity to cross-examine C.L. about the statements.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion."  *Wolfe v. Commonwealth*, 67 Va. App. 97, 106 (2016) (quoting *Blain v. Commonwealth*, 7 Va. App. 10, 16 (1988)).  "On appellate review of issues involving the admissibility of evidence, the Court views the evidence in the light most favorable to the Commonwealth as the party who prevailed below."  *Haas v. Commonwealth*, 71 Va. App. 1, 5 n.1 (2019), *aff'd in part and vacated in part*, 299 Va. 465 (2021).

Under Virginia Rule of Evidence 2:801(d)(2)(A), "[a] prior statement that is consistent with the hearing testimony of the witness is admissible for purposes of rehabilitating the witness' credibility, but only if . . . the witness has been impeached using a prior inconsistent statement as provided in Rule 2:607 . . . ."  "Where the opposing party has attempted to impeach the witness by offering a prior inconsistent statement made by the witness, prior consistent statements made by the witness are admissible to support the witness."  *Anderson v. Commonwealth*, 282 Va. 457, 464 (2011).  "It is appropriate to admit a prior consistent statement under these circumstances.  The fact that a witness made a prior consistent statement, as well as an inconsistent statement, is

- 9 -

relevant in considering the impeaching effect of the inconsistent statement on the witness's testimony." *Id.* (quoting *Clere v. Commonwealth*, 212 Va. 472, 473 (1971)). "[T]he amount of detail contained in a prior consistent statement that may properly be admitted into evidence is limited. At some point, restatement of the impeached witness' account crosses the line separating rehabilitation from mere repetition . . . ." *Id.* at 466.

In this case, through direct examination of Detective Powell, Newberger established that there was inconsistency between C.L.'s trial testimony and her statements to Detective Powell regarding Newberger's use of a knife against her, thus implying that she was not telling the truth about certain matters. He argues that the Commonwealth was limited to rehabilitating C.L.'s credibility with prior consistent statements about the knife. Instead, the Commonwealth rehabilitated C.L.'s credibility using other prior consistent statements from the same police interview that Newberger used to impeach C.L. Although some of Detective Powell's testimony went beyond C.L.'s prior statements, the trial court did not err in allowing the testimony because the statements were not outside the scope of rehabilitation. The Commonwealth's use of prior consistent statements in this manner was not improper. *See id.* at 464-65 ("[T]he fact-finder, having the responsibility of weighing the credibility of the witness, is entitled to consider both the fact that he uttered consistent statements, along with inconsistent statements, and the circumstances in which each was made.").

Further, the court issued a jury instruction requiring the jury to consider the evidence only for the purpose of rehabilitation. Generally, we presume that juries follow their instructions. *Davison v. Commonwealth*, 69 Va. App. 321, 331 (2018). Here, the statements that went outside the scope of C.L.'s testimony supported the charge of sodomy and one of the counts of object sexual penetration. The jury acquitted Newberger of those charges and thus we have

no doubt that the jury followed the limiting instruction.[3] The trial court did not abuse its

discretion in admitting C.L.'s prior consistent statements.

### III.

Newberger challenges the sufficiency of the evidence to sustain his convictions for taking

indecent liberties, one count of aggravated sexual battery, and one count of sexual penetration

with an object.[4] "On review of the sufficiency of the evidence, 'the judgment of the trial court is

presumed correct and will not be disturbed unless it is plainly wrong or without evidence to

support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v.

Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"

*Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support

for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its

opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v.

Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App.

273, 288 (2017)). We address each contested conviction individually.

### Indecent Liberties

The indictments charged Newberger with taking indecent liberties with C.L. pursuant to

Code § 18.2-370(A)(4), which prohibits an adult, with lascivious intent, to knowingly and

intentionally "propose" to a child under fifteen "the performance of an act of sexual intercourse,

---

[3] Although the jury convicted Newberger of two of the three counts of object sexual penetration, that decision was amply supported by the other evidence in the record and there is nothing in the record to indicate that the jury considered Detective Powell's testimony when rendering those convictions.

[4] Newberger does not challenge the sufficiency of the evidence to sustain his convictions for rape, contributing to the delinquency of a child, and the remaining convictions for aggravated sexual battery and object sexual penetration.

anal intercourse, cunnilingus, fellatio, or anilingus or any act constituting an offense under

§ 18.2-361 . . . ." Newberger maintains that the evidence was insufficient to sustain all five

convictions for taking indecent liberties with C.L. because the Commonwealth did not prove that

he "propose[d]" the commission of a sexual act to her. Newberger failed to make this argument

in a motion to strike after he introduced evidence or in a motion to set aside the verdict.

Regarding the indecent liberties charges, Newberger argued at the close of all the evidence only

that there was no proof of "five separate incidents of indecent liberties with a child," relying "on

sort of double jeopardy grounds."

"No ruling of the trial court . . . will be considered as a basis for reversal unless an

objection was stated with reasonable certainty at the time of the ruling, except for good cause

shown or to enable this Court to attain the ends of justice." Rule 5A:18.

> In a jury trial, the defendant preserves his objections to the
> sufficiency of the evidence in a motion to strike at the conclusion
> of the Commonwealth's case if he elects to not introduce evidence
> of his own, or in a motion to strike at the conclusion of all the
> evidence or a motion to set aside the verdict if he does elect to
> introduce evidence of his own.

*Commonwealth v. Bass*, 292 Va. 19, 33 (2016); *see also Sabol v. Commonwealth*, 37 Va. App. 9,

20 (2001) (same).

Newberger did not preserve the claim he advances on appeal concerning the indecent

liberties convictions by raising it at the conclusion of the evidence in a motion to strike or in a

motion to set aside the verdict. Newberger does not invoke the good cause or ends of justice

exceptions to Rule 5A:18, and the Court will not apply the exceptions sua sponte. *Edwards v.*

*Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc). Accordingly, Rule 5A:18 bars our

consideration of this argument on appeal.

## Aggravated Sexual Battery

Newberger contends that there was insufficient evidence to sustain one of his five convictions for aggravated sexual battery. He argues that because C.L. testified that he touched her with his penis "four or five times," there could be only four convictions for aggravated sexual battery and that C.L. "did not distinguish whether the times he touched her with his penis were separate from the one or more times he touched her with his hand."

Under Code § 18.2-67.3(A)(1), sexual abuse of a victim less than thirteen years old is aggravated sexual battery. "'Sexual abuse'" is "an act committed with the intent to sexually molest, arouse, or gratify any person, where . . . [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts . . . ." Code § 18.2-67.10(6)(a).

C.L. testified that Newberger touched her "four or five times" with his penis inside her private area, which she indicated was her vagina. In addition, C.L. stated that Newberger used his hands to touch her on the "inside" of her private for about two minutes. Viewing the evidence in the light most favorable to the Commonwealth, as we must, the evidence was sufficient to prove at least five acts of sexual abuse. A reasonable finder of fact could conclude beyond a reasonable doubt that Newberger was guilty of five separate charges of aggravated sexual battery.

## Object Sexual Penetration

To prove guilt of object sexual penetration of a child under thirteen years old, the Commonwealth must prove that the accused "penetrate[d] the labia majora or anus" of the child with an "inanimate or animate object." Code § 18.2-67.2(A)(1). Newberger argues that the trial court erred in denying his motion to strike one of the object sexual penetration charges. He maintains that "[b]ased upon C.L.'s testimony that she was penetrated only two times, [and]

- 13 -

because [he] was convicted of one count of rape, he could not be convicted of more than one count of object sexual penetration."

As noted above, C.L. testified to more than one penetration of her vagina. Specifically, she said that Newberger touched the inside of her vagina with his penis "four or five" times and touched the inside of her vagina and buttocks with his hands twice. Accordingly, a reasonable finder of fact could conclude beyond a reasonable doubt that Newberger committed two offenses of sexual penetration with an object, notwithstanding the penetration of C.L.'s vagina with his penis necessary to sustain his rape conviction. We therefore do not disturb Newberger's two convictions for object sexual penetration.

IV.

Newberger contends that the trial court violated the best evidence rule in admitting screenshots of the text messages he sent Brittany because the screenshots were duplicates and "no explanation was given for why the originals were unavailable."

"As a legal term of art, 'the best evidence rule requires that where the contents of a writing are desired to be proved, the [original] writing itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted.'" *Dalton v. Commonwealth*, 64 Va. App. 512, 522 (2015) (quoting *Brown v. Commonwealth*, 54 Va. App. 107, 115 (2009)). We have previously recognized that text messages on a cell phone constitute "writings" for purposes of the best evidence rule. *See id.* at 523. Writings include words "set down by . . . photographing . . . mechanical or electronic recording, or other form of data compilation or preservation." *Id.* at 522; Va. R. Evid. 2:1001(1).

Virginia appellate courts have applied the concept of "duplicate originals" to mechanically reproduced copies of writings. *See, e.g.*, *Burton v. Frank A. Seifert Plastic Relief Co.*, 108 Va. 338, 352-53 (1908) (applying the duplicate original principle to "letter-press

- 14 -

copies"); *Chesapeake & O. Ry. Co. v. F. W. Stock & Sons*, 104 Va. 97, 101 (1905) (recognizing

that a "carbon copy" may be regarded as a "duplicate original"). A duplicate original is "made at

the same time, by the same [mechanical] impression, and each is an exact counterpart of the

other." *Winston v. Commonwealth*, 16 Va. App. 901, 904 (1993) (alteration in original)

(quotations and citation omitted). It is accorded the same dignity as an original and, "if

otherwise proper," similarly "admissible in evidence." *Id.* (quoting *Virginia-Carolina Chem. Co.

v. Knight*, 106 Va. 674, 679 (1907)). Under this view, "[m]any of the documents that we

commonly refer to as 'copies' are in fact 'duplicate originals,' and are *treated* as 'originals' for

purposes of the best evidence rule." Kent Sinclair, *The Law of Evidence in Virginia* § 18-4[a], at

1267-68 (8th ed. 2018). And "application of the best evidence rule is unnecessary" when the

admitted evidence qualifies as an original. *Winston*, 16 Va. App. at 904.

"A screenshot, sometimes called a screen capture, is an image of a cell phone's screen

that is saved as a graphic file in the phone's photographs." *Dalton*, 64 Va. App. at 517 n.4. It is

no different than photocopying or "carbon copying" the cell phone screen. The screenshot of

text messages from Brittany's phone logically qualifies as a "duplicate original" and may be

treated as the original for purposes of the best evidence rule. We thus find no abuse of discretion

in the trial court's decision to overrule appellant's objection to the text messages on best

evidence grounds.

V.

Newberger argues that the trial court erred by admitting Racheau-Bryant's CV into

evidence because it was hearsay. "'Hearsay' is a statement, other than one made by the declarant

while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted." Va. R. Evid. 2:801(c). "Hearsay evidence is inadmissible at trial unless it falls into

one of the recognized exceptions to the rule." *Clay v. Commonwealth*, 33 Va. App. 96, 104

- 15 -

(2000) (en banc), *aff'd*, 262 Va. 253 (2001). "A person seeking to have hearsay declarations admitted must clearly show that they are within an exception to the rule." *Id.*

The Commonwealth does not assert that Racheau-Bryant's CV was admissible under any exception to the hearsay rule. Even if the CV was hearsay, admission of the document was not reversible error. Under the harmless error doctrine, we will not reverse the trial court where it plainly appears that the error did not affect the verdict. *Cairns v. Commonwealth*, 40 Va. App. 271, 286 (2003). "An error does not affect the verdict if we can determine . . . that, had the error not occurred, the verdict would have been the same." *Id.* We must review the record and consider whether the error may have affected the resolution of contested issues. *Becker v. Commonwealth*, 64 Va. App. 481, 497 (2015). If the review shows that the error "did not influence the jury, or had but slight effect," then we will uphold the judgment. *Rose v. Commonwealth*, 270 Va. 3, 12 (2005) (quoting *Clay v. Commonwealth*, 262 Va. 253, 260 (2001)).

At the preliminary hearing, Racheau-Bryant testified to her education, training, and experience in trauma therapy. The trial court ruled that Racheau-Bryant was an expert in trauma therapy, and Newberger had the opportunity to cross-examine Racheau-Bryant about her education and experience counseling children with trauma and testifying in court. At the trial, Racheau-Bryant testified that she had previously been "qualified as an expert in the area of child sexual trauma" by the trial court. The only appreciable effect of the CV would have been to corroborate the trial court's ruling on that point. The CV was unrelated to any issue at trial, as it only reflected Racheau-Bryant's experience, education, and training. We find no basis to conclude that Racheau-Bryant's CV had any tendency to prove or disprove any fact that was at issue at trial, or that it had any effect upon the jury. It merely corroborated her designation as an expert witness. *See Rose*, 270 Va. App. at 12 (finding that we will not reverse a judgment where

- 16 -

an error "did not influence the jury, or had but slight effect" (quoting *Clay*, 262 Va. at 260)).

Thus, assuming without deciding that the trial court erred in admitting the CV into evidence, we

find that the error was harmless.

CONCLUSION

For the foregoing reasons, we find no reversible error in the trial court's rulings or its

finding that the evidence was sufficient to support the convictions. Accordingly, we affirm the

judgment.

*Affirmed.*